UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JOANNA SMITH-GRIFFIN,

Defendant.

**SEALED INDICTMENT**

24 Cr.

**24 CRIM 648**

## COUNT ONE
### (Securities Fraud)

The Grand Jury charges:

#### Overview

1.     From at least in or about November 2020 through at least in or about June 2024, JOANNA SMITH-GRIFFIN, the defendant, engaged in a scheme to defraud investors in AllHere Education, Inc. ("AllHere"), a startup company she founded at a startup incubator in 2016. AllHere pitched itself as using artificial intelligence ("AI") to create technology solutions for K-12 schools that would reduce classroom absenteeism and increase student and family engagement. SMITH-GRIFFIN, AllHere's chief executive officer, repeatedly misled investors, employees, and customers by inflating AllHere's revenue, cash position, and customer base. In total, SMITH-GRIFFIN fraudulently obtained nearly $10 million from AllHere's investors.

2.     JOANNA SMITH-GRIFFIN, the defendant, used AllHere's purported success to raise her public profile. SMITH-GRIFFIN was named a Forbes 30 Under 30 Award recipient in Education, included on Inc.'s 2024 Female Founders 250 list, and featured in major media profiles. AllHere was named to Time World's Top EdTech Companies 2024. By the time the fraud unraveled in or about June 2024, in addition to the at least approximately $8.5 million in investor funds SMITH-GRIFFIN had obtained for AllHere by fraud, SMITH-GRIFFIN had also personally

obtained hundreds of thousands of dollars from defrauded investors, both through selling her own shares in AllHere and through misappropriating AllHere corporate funds. SMITH-GRIFFIN used those fraudulently obtained funds to, among other things, pay for her house and her wedding.

3. In or about May and June 2024, two of AllHere's major investors and its outside financial accountant ("Accountant-1") discovered discrepancies between the AllHere financials that JOANNA SMITH-GRIFIFN, the defendant, was sending to investors and AllHere's true financials. In an attempt to conceal her crimes and reassure AllHere's concerned investors, SMITH-GRIFFIN created a fake AllHere email address for a real AllHere financial consultant ("Consultant-1"), which SMITH-GRIFFIN used to masquerade as Consultant-1 and send additional false AllHere financial and client information to investors.

4. In or about June 2024, AllHere's board of directors terminated JOANNA SMITH-GRIFFIN, the defendant, as AllHere's CEO, and AllHere furloughed the majority of its employees and shuttered its operations. Soon thereafter, AllHere filed for Chapter 7 bankruptcy.

## Background

5. JOANNA SMITH-GRIFFIN, the defendant, founded AllHere in 2016. SMITH-GRIFFIN's stated initial goal for AllHere was to use technology to boost classroom attendance and reduce absenteeism in K-12 schools. This technology included, for example, an automated text messaging service to send "nudges" to parents to check on their children and improve classroom attendance. SMITH-GRIFFIN later pivoted AllHere's stated strategy to using AI technology to develop a "chatbot" that would interact with students and their families to increase classroom attendance and engagement. By in or about 2023, AllHere entered into a multi-million dollar contract with the second-largest school district in the country to develop an AI chatbot called

2

"Ed." Ed was intended to use generative AI technology to direct students to tailored resources and assignments and provide encouraging feedback.

6.     From approximately in or about August 2017 through in or about April 2020, JOANNA SMITH-GRIFFIN, the defendant, raised approximately $4 million from investors in AllHere's pre-seed and seed financing rounds. These investments included approximately $3 million in investments from a New York-based venture capital firm ("Investor-1"). As part of Investor-1's seed round investment, SMITH-GRIFFIN agreed to appoint two Investor-1 principals as members of AllHere's board of directors. One of those directors ("Director-1"), in turn, recruited high profile outside directors to AllHere's board and provided strategic guidance to SMITH-GRIFFIN.

7.     In or about early 2020, AllHere engaged Accountant-1, a financial accounting firm located in New York, to provide AllHere accounting services. From the time of its engagement through in or about June 2024, Accountant-1 regularly reviewed AllHere's financials with JOANNA SMITH-GRIFFIN, the defendant, including by video teleconference calls where Accountant-1 employees walked SMITH-GRIFIFN through Accountant-1's financial modeling for AllHere.

8.     As AllHere's founder and CEO, JOANNA SMITH-GRIFFIN, the defendant, exercised exclusive control over AllHere's communications with investors, with its board of directors, its customers, and its outside vendors and consultants. No other person associated with AllHere had control over the entirety of AllHere's bank accounts, corporate records, and email accounts, and its communications with investors, clients, and outside financial consultants and accountants.

3

## The Series A Fraud

9. By in or about November 2020, AllHere commenced a "Series A" financing round to raise additional capital for AllHere. JOANNA SMITH-GRIFFIN, the defendant, told potential investors she was seeking $8 million in AllHere's Series A round. In marketing materials and financial statements provided to potential Series A investors, SMITH-GRIFFIN misrepresented AllHere's revenue, cash, and customer base.

### *Revenue*

10. In investor decks provided to potential Series A investors in or about January 2021 (the "Series A Investor Decks"), JOANNA SMITH-GRIFFIN, the defendant, represented the following about AllHere's customer base and annual recurring revenue ("ARR")[1]:

## Key Metrics

We Are Growing Revenue 100% YOY

|  | FY 2018 | FY 2019 | FY 2020 | FY 2021E | FY 2022E | FY 2024E |
|---|---|---|---|---|---|---|
| **Total customers** | 11 | 35 | 92 | 180 | 360 | 720 |
| **Total ARR** | $890K | $1.76M | $3.7M | $7.0M | $21M | $57M |

In the Series A Investor Decks, SMITH-GRIFFIN claimed that AllHere had already earned approximately $890,000, $1.76 million, and $3.7 million in ARR in 2018, 2019, and 2020, respectively. From this, SMITH-GRIFFIN claimed, AllHere was "[g]rowing [r]evenue 100% [year over year]."

---

[1] Annual Recurring Revenue is a non-Generally Accepted Accounting Principle metric that measures the expected yearly revenue over the life of a multi-year subscription contract. For example, a two-year contract that is expected to generate $12,000 in revenue would generate $6,000 in ARR each year of the subscription. ARR is a metric commonly used in the software industry where revenues are dependent on multi-year subscriptions over the life of a contract.

4

11.     In or about February 2021, JOANNA SMITH-GRIFFIN, the defendant, gave potential Series A investors access to an online data room that included, among other things, purported financial statements for AllHere (the "Series A Financial Statements"). Similar to the Series A Investor Decks, the Series A Financial Statements reported that AllHere had generated revenue of approximately $890,000 in 2018, $1.8 million in 2019, and $3.7 million in 2020.

12.     The revenue figures in the Series A Investor Decks and Series A Financial Statements were false. For example, for 2020, the same year that JOANNA SMITH-GRIFFIN, the defendant, told investors that AllHere had earned approximately $3.7 million in ARR/revenue, AllHere had in fact generated only approximately $5,400 in ARR and only approximately $11,000 in total revenue.

### *Customers*

13.     As depicted in Paragraph 10, in the Series A Investor Decks, JOANNA SMITH-GRIFIFN, the defendant, told investors that the $3.7 million in ARR AllHere had earned in 2020 came from its 92 total customers.

14.     That representation was also false. By the time AllHere went bankrupt nearly three years later, AllHere had never had more than approximately thirty-one customers total, less than a third of what JOANNA SMITH-GRIFFIN, the defendant, told investors AllHere had under contract by early 2021.

5

15.     In another slide in the Series A Investor Decks, JOANNA SMITH-GRIFFIN, the defendant, included the following regarding AllHere's customers:

# Our Track Record



Customers and Employees Love Us



The COVID-19 pandemic has devastated communities across the nation. Our families are struggling to do the very best they can, under the most challenging of circumstances. I love AllHere! At our school, we know that to 'show up' and learn each day online and in-person, our families need many layers of support. AllHere is giving us an innovative tool that we need to offer equitable access to virtual learning and in-person learning. We strongly believe that this is working, and are eager to expand our efforts.

**Michelle F.**
School Leader



I prefer AllHere because of its emphasis on positive communication rather than punitive communication like the threat of court or losing grades. We are boosting student attendance and engagement. AllHere is also serving as a proactive truancy prevention measure and helps deter chronic absenteeism at the same time.

**Senecia S.**
District Leader



I can't see how you can do any form of attendance interventions without AllHere. AllHere has helped us more effectively support our schools, families, and students.

**Bryan M.**
District Leader





The lower right portion of the slide features logos for eight public school districts that SMITH-GRIFFIN represented to investors as AllHere customers: the New York City Department of Education; Atlanta Public Schools; Boston Public Schools; Baltimore County Public Schools; Prince George's County Public Schools; Durham Public Schools; Grand Rapids Public Schools; and the Bureau of Indian Education.

16.     Again, this representation was false. Six of these school districts had no contractual relationship with AllHere. The two districts that had contracts with AllHere, Boston Public Schools and Prince George's County Public Schools—paid AllHere only approximately $27,000 and $30,000, respectively, over the life of their contracts.

17.     In other materials that JOANNA SMITH-GRIFFIN, the defendant, provided to potential Series A investors, SMITH-GRIFFIN also included a chart of anonymized customers

6

already under contract with AllHere, approximately thirteen of which AllHere claimed had generated at least six figures of revenue for at least one of the years 2018, 2019, and 2020.

18. Again, this representation was false. AllHere did not have a single contract that generated over $100,000 in revenue in any year at the time of its Series A financing round closed. Even by the time it collapsed nearly three years later, in 2024, AllHere had only approximately three customers that generated over $100,000 in revenue.

## Cash

19. In the Series A Financial Statements that JOANNA SMITH-GRIFFIN, the defendant, provided to potential Series A investors, SMITH-GRIFFIN represented that AllHere had approximately $2.5 million in cash at the end of 2020.

20. Again, this representation was false. In actuality, AllHere had only approximately $494,000 in cash at the end of 2020.

## The Successful Close

21. In or about April 2021, JOANNA SMITH-GRIFFIN, the defendant, closed AllHere's Series A round and raised an additional $8 million in financing from investors who received these fraudulent misrepresentations. AllHere's second largest-investor ("Investor-2") led the Series A financing round and invested approximately $4 million. Investor-1 invested another approximately $2 million. Other investors agreed to invest the remaining $2 million. An Investor-2 principal ("Director-2") was appointed to AllHere's board of directors.

22. JOANNA SMITH-GRIFFIN, the defendant, also personally sold approximately $750,000 worth of her AllHere shares to some of the Series A investors, including Investor-1 and another Series A investor ("Investor-3"), in a secondary common stock sale that closed at in or about April 2021, in parallel to the Series A financing. In or about May 2021, SMITH-GRIFFIN

7

used the money she received to, among other things, put a $150,000 down payment on a home in North Carolina and pay for her wedding expenses.

## The Convertible Promissory Notes

23. After the Series A financing round closed, JOANNA SMITH-GRIFFIN, the defendant, sent regular email updates to AllHere's investors and board of directors regarding AllHere's financial performance and condition. Like the Series A financing, those emails contained material misrepresentations by falsely inflating AllHere's revenue, customer base, and cash position.

24. Until in or about March 2023, AllHere's only bank account was located at Silicon Valley Bank (the "SVB Account"). In or about March 2023, SVB experienced a bank run on its deposits, which quickly led to its insolvency, seizure by regulators, and placement into FDIC receivership. At all relevant times, JOANNA SMITH-GRIFFIN, the defendant, was the sole authorized signatory on the AllHere SVB Account.

25. On or about March 12, 2023, after SVB failed, JOANNA SMITH-GRIFFIN, the defendant, sent an email to AllHere's board of directors and investors, in which she claimed that, as of that date, AllHere had approximately $10.1 million in cash on deposit in the SVB Account, representing 100% of its cash, that AllHere could no longer access. That was false. As of March 12, 2023, AllHere's closing balance in the SVB Account was only approximately $1.7 million.

26. In that same March 12 email to AllHere's board of directors, JOANNA SMITH-GRIFFIN, the defendant, claimed that AllHere could not meet its payroll obligations and needed an immediate emergency bridge loan to continue funding its operations. In particular, SMITH-GRIFFIN claimed that AllHere's payroll obligation for the following Monday was approximately $230,809. This was false. In fact, AllHere's total personnel costs for March 2023 (including

8

contractor expenses) were only approximately $37,777, and AllHere's monthly total personnel costs never exceeded approximately $55,000 for any month in 2023.

27.     In response to the request from JOANNA SMITH-GRIFFIN, the defendant, for an emergency bridge loan for AllHere, Investor-1 and Investor-3 agreed to lend AllHere $250,000 each in the form of convertible promissory notes, which were executed on or about March 13, and 16, 2023, respectively.

## **The Series B Fraud**

28.     In addition to sending false financial updates to her existing investors, JOANNA SMITH-GRIFFIN, the defendant, sought additional tens of millions of dollars from new investors in AllHere's Series B financing round. For example, in or about the summer of 2023, SMITH-GRIFFIN engaged in discussions with a private equity firm ("Firm-1") about Firm-1 investing in AllHere's next capital raise.

29.     As part of those negotiations, Firm-1 asked JOANNA SMITH-GRIFFIN, the defendant, to provide AllHere's financials and other materials to evaluate the investment opportunity. On or about August 29, 2023, SMITH-GRIFFIN sent Firm-1 a spreadsheet purporting to contain AllHere's historical financials for 2019 through July 2023 (the "Series B Spreadsheet").

30.     The Series B Spreadsheet falsely represented AllHere's revenues and cash position.

    a.     For revenue, the Series B Spreadsheet claimed that AllHere had generated revenue as reflected in the table below:

| 2019 | 2020 | 2021 | 2022 | 2023 (YTD) |
|------|------|------|------|------------|
| $3,077,419 | $6,799,596 | $10,487,839 | $11,367,651 | $7,606,638 |

9

These numbers were false. For example, AllHere's 2020 revenue, which in fact was approximately $11,000, had been inflated an additional approximately $3.1 million from the false $3.7 million figure JOANNA SMITH-GRIFFIN, the defendant, used in the Series A materials, to approximately $6.8 million. For 2021 and 2022, AllHere had generated approximately only $19,812 and $434,757 in actual revenue, respectively, not the approximately $10.5 million and $11.4 million, respectively, that SMITH-GRIFFIN represented to Firm-1 in the Series B Spreadsheet. For January 2023 through July 2023, AllHere had generated only approximately $1.17 million in revenue, not the approximately $7.6 million SMITH-GRIFFIN represented to Firm-1 in the Series B Spreadsheet.

        b.     For cash, the Series B Spreadsheet claimed that, as of July 30, 2023, AllHere had approximately $16.4 million in cash across three different bank accounts, including a Bank of America account opened after the SVB failure (the "BOA Account") that purportedly had $15.6 million in cash on hand. This was also false. In fact, AllHere had only approximately $921,000 in cash as of July 30, 2023, and only approximately $170,000 in the BOA Account.

        31.     After receiving the Series B Spreadsheet from JOANNA SMITH-GRIFFIN, the defendant, on or about September 23, 2023, Firm-1 sent SMITH-GRIFFIN a nonbinding term-sheet that proposed to invest at least $35 million in AllHere's Series B round, in exchange for a minority stake in AllHere, which Firm-1 valued based on the financials that SMITH-GRIFFIN provided as worth approximately $135 million. SMITH-GRIFFIN countersigned the term sheet that same day.

        32.     In or about October 2023, a Firm-1 managing director ("MD-1") texted JOANNA SMITH-GRIFFIN, the defendant, to report that Firm-1's accounting providers were uncovering

10

issues in AllHere's financials during the due diligence process. Ultimately, by in or about December 2023, Firm-1 declined to pursue the offered Series B transaction.

33.    In or about December 2023, JOANNA SMITH-GRIFFIN, the defendant, learned that MD-1 had scheduled calls with Investors-1 and -2 to explain to them that Firm-1 was not moving forward with the Series B proposal. SMITH-GRIFFIN texted MD-1 to ask MD-1, in sum and substance, not to contact her investors without her knowledge or consent, and told MD-1 that MD-1 could contact SMITH-GRIFFIN or AllHere's attorneys if MD-1 had any additional questions. In response, MD-1 agreed to cancel his calls with Investors-1 and -2.

**The Collapse of AllHere and SMITH-GRIFFIN's Impersonation of Consultant-1**

34.    Prior to in or about May 2024, AllHere's investors and board of directors received financial updates directly from JOANNA SMITH-GRIFFIN, the defendant, not from Accountant-1 or anyone else with access to AllHere's true financial position. On or about May 20, 2024, after SMITH-GRIFFIN was late in sending AllHere's Q1 2024 financial reports to investors, an associate at Investor-1 based in New York, New York ("Associate-1") contacted Accountant-1 directly to obtain AllHere's quarterly financials.

35.    That same day, an Accountant-1 employee emailed JOANNA SMITH-GRIFFIN, the defendant, to tell SMITH-GRIFFIN that Accountant-1 had pulled together AllHere's Q1 2024 financials and asked SMITH-GRIFFIN if Accountant-1 could share the financials with Investor-1. SMITH-GRIFFIN responded, "Please don't. I will."

36.    A different Accountant-1 representative, however, sent Investor-1 AllHere's true Q1 2024 financials. Those records showed that AllHere had generated only approximately $442,000 in revenue for the quarter, with an ARR of approximately $2.5 million, millions below what JOANNA SMITH-GRIFFIN, the defendant, had reported to AllHere investors in prior

11

quarters. For example, in or about November 2023, SMITH-GRIFFIN had emailed investors that AllHere was close to $20 million in ARR.

37.     After receiving AllHere's financials from Accountant-1, Investor-1 and Accountant-1 began communicating without JOANNA SMITH-GRIFFIN, the defendant, to reconcile the discrepancy and understand AllHere's true financial picture. As part of that reconciliation, on or about June 10, 2024, Consultant-1, an outside financial consultant to AllHere, participated in a video teleconference call with Director-1 and Director-2.

38.     During that June 10 video call, Director-1 received an email that purported to be from Consultant-1 using an AllHere email account (the "Fake Consultant-1 Email Account"). The email cc'ed JOANNA SMITH-GRIFFIN, the defendant, and attached a spreadsheet with purported updated contract data for AllHere for the year 2023. The email:

    a.     Falsely claimed AllHere had an "Active ARR" of approximately $20.7 million;

    b.     Listed approximately 25 school districts under the heading "2023 Customer Wins," many of which had no contracts or agreements with AllHere; and

    c.     Included purported payments made by AllHere customers that were largely falsified.

39.     Director-1 told Consultant-1 during their video call that she had received Consultant-1's email. Consultant-1 responded that Consultant-1 did not have an AllHere email account, did not send that email, and had not been in contact with JOANNA SMITH GRIFFIN, the defendant, since approximately in or about April 2024, over a month prior.

40.     In fact, JOANNA SMITH-GRIFFIN, the defendant, created and controlled the Fake Consultant-1 Email Account. SMITH-GRIFFIN created the Fake Consultant-1 Email

12

Account on or about May 20, 2024, the day Accountant-1 sent Associate-1 AllHere's true quarterly financials. SMITH-GRIFFIN used the Fake Consultant-1 Email Account in at least the following ways:

      a.     On or about May 20, 2024, SMITH-GRIFFIN sent Associate-1 an email from her AllHere account, cc'ing the Fake Consultant-1 Email Account, to introduce Associate-1 to Consultant-1 as AllHere's fractional CFO who was available to answer Associate-1's questions on behalf of AllHere.

      b.     On or about June 10, 2024, SMITH-GRIFFIN sent the above described email to Director-1 using the Fake Consultant-1 Email Account.

      c.     Shortly after sending the June 10 email to Director-1, SMITH-GRIFFIN emailed other Investor-1 representatives, including an Investor-1 partner ("Partner-1") based in New York, New York, and said that Consultant-1 had emailed Director-1 to provide the financial information Partner-1 had asked SMITH-GRIFFIN for on or about June 3, 2024, including audited financial statements. SMITH-GRIFFIN cc'ed the Fake Consultant-1 Email Account on this email.

      41.     Also on or about June 10, 2024, JOANNA SMITH-GRIFFIN, the defendant, emailed Accountant-1 to terminate Accountant-1's services "by the end of the day," falsely claiming that AllHere had migrated its financial accounting in-house and no longer needed Accountant-1's services. SMITH-GRIFFIN removed Accountant-1's access to the AllHere SVB Account.

      42.     After this exchange, representatives of Investor-1, Investor-2, and Accountant-1 compared the AllHere financials that Investors-1 and -2 had received from JOANNA SMITH-GRIFFIN, the defendant, to the true AllHere financials that Accountant-1 had provided to SMITH-GRIFFIN. Investor-1, Investor-2, and Accountant-1 discovered SMITH-GRIFFIN's

13

misrepresentations about AllHere's revenue and cash position. Over the following days, the AllHere board of directors removed SMITH-GRIFFIN's access to AllHere bank and corporate accounts, and ultimately terminated SMITH-GRIFFIN's position as CEO.

43. On or about June 14, 2024, AllHere furloughed the majority of its employees. In or about August 2024, AllHere filed for Chapter 7 bankruptcy.

44. From in or about 2017 up through on or about June 10, 2024, JOANNA SMITH-GRIFFIN, the defendant, used her control over AllHere's bank accounts to transfer at least $600,000 in corporate funds to her personal bank account. These transfers, unlike other payments from AllHere to SMITH-GRIFFIN such as payroll, were accomplished using repeat wire transfers generally under $10,000, or sent through PayPal and Zelle. In AllHere's internal general ledger, SMITH-GRIFFIN disguised certain transfers by, for example, attributing them to a person other than herself.

**Statutory Allegations**

45. From at least in or about November 2020 through in or about June 2024, in the Southern District of New York and elsewhere, JOANNA SMITH-GRIFFIN, the defendant, willfully and knowingly, directly and indirectly, by the use of a means and an instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit

14

upon a person, to wit, SMITH-GRIFFIN, made false and misleading statements to investors about

AllHere's revenue, customers, and cash.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT TWO
## (Wire Fraud)

The Grand Jury further charges:

46.     The allegations contained in paragraphs 1 through 44 of this Indictment are repeated and realleged as if fully set forth herein.

47.     From at least in or about November 2020 through in or about June 2024, in the Southern District of New York and elsewhere, JOANNA SMITH-GRIFFIN, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, SMITH-GRIFFIN engaged in a scheme to obtain money from investors and lenders by means of false and misleading statements about AllHere's revenue, customers, and cash, and in furtherance of that scheme used interstate wires, some of which transited to, from, or through the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

15

## COUNT THREE
### (Aggravated Identity Theft)

The Grand Jury further charges:

48.     The allegations contained in paragraphs 1 through 44 of this Indictment are repeated and realleged as if fully set forth herein.

49.     From at least in or about May 2024 through at least in or about June 2024, in the Southern District of New York and elsewhere, JOANNA SMITH-GRIFFIN, the defendant, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, SMITH-GRIFFIN used the name and purported email address of Consultant-1 during and in relation to the wire fraud violations charged in Count Two of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1),
1028A(b), and 2.)

## FORFEITURE ALLEGATIONS

50.     As a result of committing one or more of the offenses charged in Counts One and Two of this Indictment, JOANNA SMITH-GRIFIFN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and the following specific property: all that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, commonly described as 4516

16

Olde Stream Ct, Raleigh, North Carolina 27612, with a legal description of LO2 OLDE TOWNE

SUB BM1994-1186; REID 207326.

## Substitute Assets Provision

51.     If any of the above-described forfeitable property, as a result of any act or omission

by the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without

         difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and

Title 28, United States Code Section 2461(c), to seek forfeiture of any other property of the

defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981(a)(1)(C);
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461.)

GRAND JURY FOREPERSON

DAMIAN WILLIAMS
United States Attorney

17